## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RYAN McGOVERN, PETER BLYTHIN, GABRIELLE BLYTHIN, BRAD GRULKE and TIANA GUTIERREZ, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>AMR CORP., AMERICAN AIRLINES, INC., BRITISH AIRWAYS, plc, UAL CORP., UNITED AIRLINES, INC., VIRGIN ATLANTIC AIRLINES,<br><br>    Defendants. | )<br>)<br>) 06CV3444<br>) JUDGE GETTLEMAN<br>) MAGISTRATE VALDEZ<br>)<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### CLASS ACTION COMPLAINT

Plaintiffs, RYAN McGOVERN, PETER BLYTHIN, GABRIELLE BLYTHIN, BRAD GRULKE and TIANA GUTIERREZ, on behalf of themselves and all others similarly situated, complain as follows:

### NATURE OF CLAIM

1. This antitrust class action is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, injunctive relief, and the costs of suit, including reasonable attorneys' and experts' fees, for the injuries to the Plaintiffs and members of the proposed Class they represent resulting from defendants' violations of the federal antitrust laws, specifically Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. The allegations set forth below are based upon information and belief pursuant to the investigation of counsel.

*FILED JUN 23 2006 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT*

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 15 and 26, and pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1367. Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c) because some of the defendants reside, or are licensed to do business or are doing business, or are found or transact business, in this district and/or the claims arose in this district.

## PARTIES

*Plaintiffs*

3. Ryan McGovern is a resident of Chicago, Illinois. McGovern flew United Airlines from Chicago O'Hare airport to London Heathrow airport in approximately 2003 or 2004.

4. Peter Blythin is a resident of Loveland, Colorado. David Blythin flew Virgin Atlantic airlines from London Heathrow airport to Newark airport on or about September 28, 2004.

5. Gabrielle Blythin is a resident of Denver, Colorado. Gabrielle Blythin flew British Airways from Denver to London Heathrow airport in approximately March, 2006.

6. Brad Grulke is a resident of Atlanta, Georgia. Grulke flew British Airways from Newark to London Heathrow airport on or about March 27, 2003.

7. Tiana Gutierrez is a resident of Madison, Wisconsin. Gutierrez flew United Air from Chicago O'Hare airport to London Heathrow airport sometime in the summer of 2005. She has also booked and pre-paid for an upcoming September 2006 flight from Chicago O'Hare airport to London Heathrow airport.

*Defendants*

8. American Airlines, Inc. is a subsidiary of Defendant AMR Corp. (collectively "American Airlines"), both of which are Delaware corporations with their principal place of business in Fort Worth, Texas.

9. British Airways, PLC ("British Airways") is a British corporation with its principal place of business in Harmondsworth, England. BA's freight carrier business, British Airway World Cargo, maintains offices in 23 cities across the United States, including an operations office at Express Center Drive, Building 516, POB 66604, O'Hare International Airport, Chicago, Illinois. According to its website, BA is one of the top ten leading cargo airlines in the relevant geographic market.

10. United Airlines, Inc. is a subsidiary of Defendant UAL Corp. (collectively, "United Airlines"), A Delaware corporation. Both United Airlines, Inc. and UAL Corp. have their principal place of business at 1200 E. Algonquin Rd., Elk Grove Township, IL 60007.

11. Virgin Atlantic Airlines, Ltd. ("Virgin Atlantic") is a company organized under the laws of the United Kingdom with its principal place of business at The Office, Crawley Business Quarter, Manor Royal, Crawley, West Sussex, RH10 9NU, United Kingdom.

12. Defendants, competitors of each other within the relevant service and geographic markets, offer international air travel service, including service that is offered in the district.

## CO-CONSPIRATORS

13. Various other individuals, partnerships, firms, corporations and associations have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof. Their identity is not known to Plaintiffs at this time.

## **CLASS ACTION ALLEGATIONS**

14. Plaintiffs bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on its own behalf and as representative of a class defined as: all persons, corporations, and other legal entities in the United States and those not residing in the United States (excluding defendants, their subsidiaries, and any co-conspirators), who purchased and paid for air travel on any of the Defendant carriers between the United States and Britain (the "Class") during the period from January 1, 2002 and the present (the "Class Period").

15. The members of the Class are so numerous and geographically disperse across the country so that joinder of all members of the Class would be impracticable. Due to the nature of the claims asserted here, Plaintiffs believe that members of the Class are located throughout the world, including the United States. The exact number of Class members is unknown by Plaintiffs at this time, but Plaintiffs believes that the Class is in the thousands and their identities can only be discovered through inspection of Defendants and their co-conspirators records, which are or should be readily available.

16. Plaintiffs' claims are typical of the other class members because Plaintiffs and all members of the Class were damaged by the same wrongful conduct of the defendants alleged herein. Plaintiffs and all the members of the Class purchased international air travel services at artificial and non-competitive prices as a result of the wrongful conduct alleged herein.

17. Plaintiffs will fairly and adequately protect the interests of the Class. The interests of Plaintiffs are coincident with, and not antagonistic to, those of the Class. In addition, plaintiffs are represented by counsel who is experienced and competent in the prosecution of complex class action antitrust litigation.

4

18. Questions of law and fact common to the members of the class predominate over questions which may affect only individual members, if any, in that defendants have acted on grounds generally applicable to the entire class. Among the questions of law and fact common to the Class are:

a. Whether defendants engaged in a contract, combination or conspiracy to fix the prices of international air travel services in connection with fuel and other surcharges and costs;

b. Whether defendants violated Section 1 of the Sherman Act;

c. The existence, duration, and illegality of the contract, combination or conspiracy alleged herein;

d. Whether defendants and each of them was a participant in the contract, combination or conspiracy alleged herein;

e. The effect upon and the extent of injuries sustained by Plaintiffs and members of the Class and the appropriate type and/or measure of damages;

f. Whether defendants took affirmative steps to conceal the contract, combination or conspiracy alleged herein; and

g. Whether plaintiffs and the members of the Class are entitled to declaratory and/or injunctive relief.

19. Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims

by certain class members, who could not afford to individually litigate an antitrust claim against large corporate defendants.

20. Plaintiffs are not aware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## INTERSTATE TRADE AND COMMERCE

21. The Defendants are leading air carries in the United States and the world dealing in the business of international air travel to and from the United States.

22. During the period of time covered by this Complaint, Defendants provided a means for public customers to travel in interstate and international commerce and between the United States and any location beyond the United States

23. The restraints hereinafter alleged have directly and substantially affected interstate commerce in that defendants have deprived Plaintiffs and the Class of the benefits of free and open competition in the business of international air travel services.

## VIOLATIONS ALLEGED

24. Beginning at least as early as January 1, 2002, the exact date being unknown to Plaintiffs, and continuing thereafter to present day, defendants, the largest providers of international air travel services in the United States and the world, engaged in a continuing contract, combination or conspiracy in unreasonable restraint of the interstate trade and commerce described above in violation of Section 1 of 15 U.S.C. § 1, commonly known as the Sherman Act.

25. The aforesaid contract, combination or conspiracy consisted of a continuing combination, agreement, understanding and concert of action among the defendants and co-

conspirators, the substantial terms which were to fix, raise, maintain and stabilize the price of surcharges relating to, among other things, fuel assessed to their international air travel customers.

26. Defendants have a collective interest to fix the prices of the surcharges they assess their customers in order to maximize their profit by depriving free and open competition in the international air travel industry.

27. Upon information and belief, the price-fixing agreement between the Defendants is facilitated by each Defendant's ability to check if another airline carrier is adhering to the agreement by accessing the company's website and or publicly known charges related to air fares to determine what that carrier is assessing its customers as a surcharge for, among other things, fuel.

28. On or about June 22, 2006, the United States Department of Justice announced that they had begun a price-fixing probe in the international airline industry. A Department of Justice spokeswoman stated that its antitrust division "is investigating the possibility of anticompetitive practices involving surcharges and rates for passenger fares and air cargo shipments."

29. On or about June 22, 2006, Britain's Office of Fair Trade announced that it had begun a similar probe. The Office of Fair Trade stated that it was conducting "both a criminal and civil investigation into alleged price coordination by airlines in relation to fuel surcharges for long-haul passenger flights to and from the U.K."

30. The Department of Justice and Office of Fair Trade have indicated their investigations could lead to criminal charges, civil penalties, or both.

31. To date, the probes have included an Office of Fair Trade inspection of British Airways' offices on or about June 13, 2006. Additionally, a grand jury has convened in the United

States in connection with the investigations. Virgin Atlantic Airways, United Airways, American Airlines have been contacted by government officials.

32. On or about June 22, 2006, British Airways acknowledged it has been subject to investigation and said it was assisting in the investigation. British Airways also acknowledged that two senior executives — Martin George, the commercial director, and Iain Burns, the chief of communications — had been placed on a leave of absence during the investigation, but it did not elaborate.

33. On or about June 22, 2006, American Airlines publicly acknowledged that it has been contacted by U.S. authorities about the probe but claims not to be a target of the investigation. American Airlines is British Airways' "Oneworld Alliance" partner. On or about June 22, 2006, "American Airlines acknowledged that it received a United States federal grand jury subpoena in connection with a government investigation into alleged price fixing in the air passenger industry."

34. On or about June 22, 2006, United Airlines publicly acknowledged it has received an inquiry in connection with the investigation and is cooperating, but claimed not to be a target of the investigation.

35. On or about June 22, 2006, Virgin Atlantic acknowledged it is "aware of the investigation" and is "assisting."

36. High fuel prices have led airlines to raise the surcharge that passengers pay on long flights.

37. The rise of low-cost carriers in the U.S. and Europe has put pressure on long-established airlines to maintain the façade of low air fares.

38. Long-established carriers like Defendants have been losing customers on short-haul flights to newer discount carriers in Europe, putting pressure on them to hold down their short-haul prices and make up the difference on fares for longer flights.

39. Many airlines have been trying to increase revenues by adding fuel surcharges to passenger ticket prices.

40. The average one-way airfare between 160 international city pairs is estimated to have grown 7.2 percent in the first quarter of 2006 from $1,547 in the first quarter of 2005. International business-class tickets, which are the primary profit drivers for full-service airlines, are estimated to have ended March costing 5.9 percent more than the first quarter of 2005.

41. The so-called fuel surcharges are a surreptitious way for airlines to raise fares by more than the true added cost of fuel.

42. Most major carriers flying between the United States and Heathrow, London's main international airport, charge passengers approximately $64.00 or more each way in fuel surcharges. In approximately April 2006, British Airways increased its fuel surcharges for long-haul flights by at least $9, in round figures, and as much as $64 on each one way ticket. Virgin Atlantic introduced an approximately $64.00 each-way fuel surcharge at around the same time. United Airlines and American Airlines currently charge approximately $67.00 each way.

41. The aforesaid combination and conspiracy has had the following effects, among others:

    a. price competition in the amount of surcharges assessed in connection with fuel, added security and war-risk insurance has been suppressed, restrained and eliminated;

9

b. the prices of surcharges for fuel, added security and war-risk insurance have been raised, fixed, maintained and stabilized at artificial and non-competitive levels; and

c. customers of the cargo airline carriers were deprived of free and open competition in the air cargo shipping of freight.

## INJURY TO PLAINTIFFS AND MEMBERS OF THE CLASS

42. During the period covered, Plaintiffs and the other members of the Class who were assessed an anticompetitive surcharge by Defendants in connection with international air travel services. By reason of the alleged violations of the antitrust laws, Plaintiffs and the other members of the Class paid higher prices for international air travel services than they would have paid in the absence of the illegal contract, combination or conspiracy, and, as a result, have been injured in their business and have suffered damages in an amount presently undetermined.

43. The specific amounts of damages have not yet been determined because such determination will require discovery. When these amounts have been determined, Plaintiffs will seek leave of Court to amend this Complaint to include such amounts.

## FRAUDULENT CONCEALMENT

44. The running of any statute of limitations has been suspended with respect to any claims which the Plaintiffs and the other members of the Class have sustained as a result of the unlawful combination and conspiracy alleged herein and with respect to their rights to injunctive relief by virtue of the federal doctrine of fraudulent concealment. Defendants through various devices and techniques of secrecy affirmatively and fraudulently concealed the existence of the unlawful combination and conspiracy alleged herein.

## COUNT I

## VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT AND SECTION 4 OF THE CLAYTON ACT

45. Plaintiffs incorporate by reference the allegations above and adopt same as though fully set forth herein.

46. Defendants and un-named conspirators entered into and engaged in a contract, combination, or conspiracy in an unreasonable restraint of trade in violation of the Section 1 of the Sherman Act and Section 4 of the Clayton Act.

47. The contract, combination, or conspiracy alleged herein has resulted in an agreement or concerted action among the Defendants and their un-named conspirators whereby as a result of these actions surcharges and prices charged for international air travel services were fixed, maintained, and standardized. The alleged contract, combination, or conspiracy is a per se violation of federal antitrust laws and is at a minimum an unreasonable and unlawful restraint of trade.

48. As result of Defendants' unlawful conduct, Plaintiffs have sustained damage by paying supra-competitive prices that they would not have had to incur but for the unlawful conduct of Defendants as alleged herein.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiffs respectfully demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that:

a. The Court determines that this action may be maintained as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as

provided by Rule 23(c)(2), Federal Rules of Civil Procedure, be given each and every member of the Class;

b. The unlawful combination and conspiracy alleged herein be adjudged and decreed to be in unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

c. The Plaintiffs and each and every member of the Class recover damages, as provided by law, determined to have been sustained by each of them, and that joint and several judgments in favor of Plaintiffs and each and every member of the Class, respectively, be entered against the defendants, in an amount to be trebled in accordance with antitrust laws, and each of them;

d. The Defendants be enjoined from continuing the unlawful contract, combination or conspiracy alleged herein;

e. The Plaintiffs and the other members of the Class recover their costs of this suit, including reasonable attorneys' fees, expert fees, and accountant's fees, as provided by law; and

f. The Plaintiffs and the other members of the Class be granted such other, further and different relief as the nature of the case may require or as may seem just and proper to this Court.

Dated: June 23, 2006

RYAN McGOVERN, PETER BLYTHIN, GABRIELLE BLYTHIN, BRAD GRULKE and TIANA GUTIERREZ, Plaintiffs

By: _____
Marvin A. Miller
Patrick E. Cafferty
Anthony F. Fata
**MILLER FAUCHER AND CAFFERTY LLP**
30 North LaSalle Street
Suite 3200
Chicago, Illinois 60602
(312) 782-4880

Guri Ademi
**ADEMI & O'REILLY, LLP**
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000